UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-515-GWU

JUDY L. COMBS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

06-515 Combs

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however,

merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Ibid</u>.  In such cases, the agency may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Judy L. Combs, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of dysmotility, mild gastroporesis, chronic obstructive pulmonary disease, undifferentiated connective tissue disorder, gastroesophageal reflux disease, status-post cholecystectomy, hysterectomy, Nissen fundoplication, history of vaginal intraepithelial neoplasia (VAIN) with laser removal, history of bone spurs in feet, right wrist pain of uncertain etiology, generalized anxiety disorder, major depressive disorder, rule out substance-induced mood disorder, and migraine headaches.  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Combs retained the residual functional capacity to perform a significant number of jobs

existing in the economy, and therefore was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 44, high school education, and work experience as an assembler and as a data entry clerk could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 388). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs; (3) could occasionally perform handling or fingering with the right hand; (4) required simple, entry level work with repetitive one-, two-, three-step procedures and no requirement for problem solving, independent planning, or the setting of goals; and (5) could have no frequent changes in work routines and only occasional interaction with coworkers, supervisors, or the general public. (Id.). The VE responded that there were jobs that such a person could perform, including surveillance monitor, gate guard, information clerk, receptionist, and ticket taker, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 389-91).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff had previously filed an application for DIB in April, 2000, which was denied in a decision by an ALJ on November 25, 2003. (Tr. 35-51). This court

affirmed the ALJ's decision on January 4, 2006.  <u>Combs v. Barnhart</u>, London Civ. Action No. 04-602-GWU (E.D. Ky.).  The residual functional capacity found by the ALJ in the current decision is largely consistent with the findings of the ALJ in the 2003 decision apart from adding some additional restrictions.  (Tr. 48).  <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837, 842 (6th Cir. 1997); Acquiescence Ruling 98-4(6).

      The plaintiff specifically alleged disability in her current application due to a broken wrist, panic attacks, and severe irritable bowel syndrome causing stomach cramps and nausea and necessitating the wearing of a diaper.  (Tr. 92).  She testified that she had painful adhesions following a hysterectomy and removal of a tumor from her abdomen.  (Tr. 368-70).  She testified that her irritable bowel syndrome caused her to go the bathroom up to five times a day, and she also had migraine headaches once a week which would limit her from doing anything.  (Tr. 380-3).  Her connective tissue disease and arthritis made it difficult for her to stand or sit for more than 15 to 20 minutes at a time.  (Tr. 381, 383-5).  She was able to use her right hand to write for only a short period of time.  (Tr. 389).  She described nervousness and panic attacks, although medication and counseling had helped her to some degree.  (Tr. 374-5, 384).

      While medical records were submitted showing that the plaintiff was treated for a variety of conditions, including chronic diarrhea and irritable bowel syndrome,

reflux disease, a mixed connective tissue disorder (Tr. 157, 159), a right ankle sprain (Tr. 287), headaches (Tr. 330), and constipation (Tr. 343) and had a laser procedure for vaginal intraepithelial neoplasia (Tr. 238), no treating or examining physician gave an opinion regarding residual functional capacity.  Mrs. Combs asserts that the number of bathroom breaks that she would be required to take for her irritable bowel syndrome would prevent her from performing any jobs, in accordance with the testimony of the VE.  (Tr. 392-3).  No medical source confirmed that the plaintiff would need as many bathroom breaks as she claimed, however.  A treating source, Dr. Rajiv Srinivas, wrote a letter dated April 12, 2006 listing the plaintiff's diagnoses.  While he stated that she was being prescribed Fioricet and opioid analgesics for severe migraines, and Xanax on an as needed basis for "severe" anxiety, the physician did not give any functional restrictions and expressed no opinion on her ability to work.  (Tr. 324).  State agency reviewing sources offered opinions that the plaintiff did not have a "severe" physical impairment (Tr. 237, 284), but the ALJ clearly disagreed and found a variety of impairments to be "severe."  However, the mere presence of a "severe" impairment does not establish functional restrictions, see, e.g., Young v. Secretary of Health and Human Services, 925 F.2d

146, 151 (6th Cir. 1990), and in the absence of any specific evidence, the ALJ could reasonably have adopted the restrictions from the prior, final decision.[1]

Psychologically, the medical evidence shows some history of complaints of anxiety dating back to at least 2002. (Tr. 149). The plaintiff's treating psychiatrist, Dr. Shahzad Shahmalak, assessed the plaintiff as having a major depressive disorder (in partial remission) and a panic disorder as of October 4, 2004. (Tr. 154). However, he described her affect as appropriate, her mood as neither markedly elevated or depressed, with adequate insight and judgment and an average or better intellect. (Id.). He assigned a Global Assessment of Functioning (GAF) score of "60+" both currently and for the past 12 months. (Id.). A GAF score of over 60 reflects only "mild" symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Some office notes which are not clearly identified, but which appear to be from Dr. Shahmalak, from 2004 and 2005 indicate that the plaintiff was being treated with medications and remained "stable and within her baseline." (Tr. 306-12). Mrs. Combs's condition may have taken a turn for the worse in February, 2006, after her mother broke her hip and had to be placed in a nursing home. (Tr. 362). There is an indication in emergency room records that Mrs. Combs was being transferred to the Hazard Appalachian

---

[1]As the Commissioner notes, the ALJ was not required to recite the plaintiff's diagnoses to the VE. Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004).

Regional Hospital for a psychiatric evaluation due to severe anxiety and depression and the risk of suicide. (Tr. 346-50). However, no records of the hospitalization are included in the court transcript. Subsequent notes include an indication from Dr. Shahmalak that the plaintiff remained nervous, but contained a reference to "rule out drug abuse as documented." (Tr. 361).[2] There is no reference to functional restrictions or a current GAF score in this note, or in the notes of a therapist from March, 2006, in which the plaintiff described worry about taking care of her mother and having problems with her husband. (Tr. 360).

The mental health functional restrictions selected by the ALJ are generally consistent with those found by state agency reviewers in 2005. (Tr. 233-6, 280-2). In view of the fact that the plaintiff failed to produce any evidence from other sources suggesting greater restrictions, the mental portion of the hypothetical question is also supported by substantial evidence.

The plaintiff's main argument on appeal is that the jobs of information clerk, security guard, and reception clerk are listed by the Dictionary of Occupational Titles (DOT) as requiring a specific vocational preparation (SVP) of three or above, which, the plaintiff asserts, take them out of the hypothetical question's requirement of being entry level work. See DOT Sections 237.367-022 (information clerk),

---

[2]The plaintiff testified that she had been accused of using "street drugs" because she had forgotten to list all of her medications. (Tr. 371).

06-515 Combs

372.667-034 (security guard), and 237.367-038 (receptionist). Counsel for the plaintiff notes that the VE had testified that the jobs were consistent with the DOT, as required by Social Security Ruling 00-4p. (Tr. 392). However, the Commissioner points out that the VE still identified the jobs of surveillance monitor and ticket taker, which the DOT lists as having an SVP of only two, indicating that they can be learned in one month or less. See DOT Sections 379.367-010 (surveillance system monitor) and 344.667-010 (ticket taker). Therefore, although a portion of the VE's testimony was erroneous, she did identify jobs consistent with the hypothetical question, and thus, the Commissioner carried his burden of showing the existence of such jobs.

The decision will be affirmed.

This the 12th day of October, 2007.

Signed By:
G. Wix Unthank
United States Senior Judge